## DAVID G. OEHRLEIN v. STATE.

189 N. W. (2d) 699.

August 27, 1971—No. 41431.

C. *Paul Jones,* State Public Defender, and *Doris O. Huspeni,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *James M. Kelley,* Assistant Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Rolloff, JJ.

PER CURIAM.

In October 1964, petitioner pled guilty to second- and third-degree murder and was sentenced to concurrent terms up to 40 years. In July 1967, he petitioned the district court for an order vacating his convictions. He appeals from an order denying him relief.

The issues raised on appeal are, first, whether petitioner was mentally competent to give a voluntary confession; second, whether the confession was elicited under circumstances which denied him a constitutional right to counsel and to remain silent; and, third, whether his plea of guilty was induced by his misapprehension concerning the admissibility of evidence and by improvident advice of counsel with respect to the consequences of an acquittal by reason of insanity.

Petitioner at every stage of these proceedings has admitted that on the evening of January 23, 1964, he killed two young children, Gary and Bonnie Lou Brindamour, in their home by striking them on the head with a hammer. The provocation was never clear, but petitioner indicated that some remark made by Gary angered him. Before leaving the premises, he also killed Gary's sister. He proceeded to his brother's house, hiding the hammer in the snow en route. On his arrival, he concealed his bloodstained clothes in the basement. About 2 o'clock in the morning he was arrested and taken to police headquarters where he signed a full confession later in the day. Among other things, he disclosed the location of the hammer, which the police then found. They also secured his brother's consent to search the basement where they discovered petitioner's clothing.

Petitioner was represented by counsel and a guardian appointed on his behalf. The district court referred to the probate court the determination of whether he was competent to stand trial after he was indicted on counts of murder in the first degree and murder in the third degree. He was found not capable of defending himself and was transferred to the State Security Hospital in June 1964. The following October he was certified as able to stand trial and was rearraigned in the district court. The state moved to reduce the first-degree murder charge to murder in the second degree after which petitioner changed his pleas

to guilty. Before accepting the pleas of guilty, the trial court conducted a presentence examination in which petitioner described the manner in which he killed the Brindamour children. Thereupon, he was sentenced to concurrent terms of 40 years and 25 years.

At the postconviction hearing, petitioner again admitted the slayings. However, he consistently complained that "I flipped out. I wasn't in my right mind"; "I lost my senses, I didn't know what I was doing. I didn't have my senses, right from wrong or should I stop or go, I lost control of myself"; "I might feel I am guilty of manslaughter"; "I believe I was sick, I am in my right mind now."

The thrust of petitioner's presentation below was his claim that he was induced to plead guilty to murder in the second degree and murder in the third degree on counsel's representation that, if he were convicted of murder in the first degree, he would face life imprisonment, and if he were acquitted of that charge, he would face commitment for life in the State Security Hospital. Petitioner asserts that, faced with these alternatives, he pled guilty to the lesser charges.

The evidence discloses that at the time of the offense petitioner was 20 years of age and illiterate. He was seriously handicapped, intellectually and emotionally. His I. Q. was between 70 and 86. One psychologist, following a private examination requested by petitioner's counsel, reported:

"David appeared as a well oriented, alert young man who was not grossly deviant in any one measured area. He was not technically mentally deficient, nor grossly deviant in thought or affective processes when examined. The general picture is of a border-line deviation in so many important areas that when stresses converge in a way to exploit all those vulnerabilities, he is extremely unstable. He has border-line mental ability, is further handicapped by a gross lack of educational skills, is further handicapped by a 'long history of personal social deprivation and trauma,' quite probably has serious underlying personality disturbances, and may have some minimal type of brain malfunctions."

The petition for postconviction relief alleges, among other things, that counsel or the court should have entered a plea of not guilty by reason of insanity and that failure to do so deprived petitioner of his constitutional right to due process and adequate representation. As we have indicated, this was an issue to which petitioner's testimony at the postconviction hearing was addressed. On appeal, he now argues that he pled guilty rather than seek an acquittal on the grounds of insanity because his counsel incorrectly assessed his chances of being released

from the security hospital if he prevailed on the insanity defense. His attorney did not testify at the postconviction hearing. Assuming for purposes of this appeal that petitioner's testimony was correct, we find no merit in this position. This was a matter where counsel was obliged to exercise his best judgment regarding petitioner's opportunity for ultimate release. He secured a reduction of the charges to murder in the second and murder in the third degrees, with sentences to run concurrently.

While, of course, it was impossible to prognosticate whether or when petitioner would be released from the security hospital if acquitted by reason of insanity, there was abundant evidence on which to base an opinion that he might indeed be confined for life. Under such circumstances, if counsel posed these alternatives, the plea of guilty was not induced by any misapprehension of the law or facts. The likelihood of petitioner's ever being released was not so manifest as to render counsel's judgment improvident.

Although the briefs and arguments on appeal devote much attention to petitioner's claim that he was denied fundamental rights when making his confession and in the search and seizure of incriminating evidence, we do not find it necessary to consider these issues. Petitioner on three different occasions has judicially acknowledged that in a fit of anger he killed these two young people with a hammer. This was his testimony at the probate court hearing, at the presentence examination, and at the postconviction hearing. We, therefore, need not concern ourselves with the propriety of the search or the voluntariness of the confession. Those matters are no longer relevant. The trial court concluded that petitioner was not deprived of effective representation and we concur.

Affirmed.